JOHN W. BRAZEE, PLAINTIFF IN ERROR,

v.

NICHOLAS SCHOFIELD & MARY SCHOFIELD,
DEFENDANTS IN ERROR.

By the language of the Donation Act there is granted to every man of a certain description, or if he has a wife, to him and her in equal parts, as shall be set off to them severally by the Surveyor General, a tract of land, on condition that the same shall be selected, resided upon, and cultivated a certain length of time ; subject to this qualification, that if either die intestate after compliance and before patent issues, the survivor and children or heirs of the deceased shall in equal proportions be entitled to the share of deceased.

Throughout the transaction of acquiring land under the Donation Act, the Government acts as seller, and the donee as purchaser ; and when selection, residence, and cultivation are completed, the transaction is closed. Nothing remains except for the donee to furnish proof of such compliance, and for the Government to furnish proof of title.

The act and not the patent is the instrument which effects the transfer of title —the latter only evidences title, and relates back to the act.

A claimant of title under patent, issued to the widow and heirs at law of a deceased donation claimant, is conclusively estopped from denying that such widow and children acquired title under that act.

The partition of property set up in this case, effected in the Probate Court, considered merely as a judicial proceeding, was void; but regarded as a voluntary proceeding entered into by persons of full age, or by minors through their guardians, under the supervision of and with the sanction of the Probate Court, was valid.

If a guardian, in the management or disposition of the ward's property, acts under judicial authority, no difference how irregularly exercised, such acts are valid against collateral attack.

Though the act of a guardian in disposing of his ward's property be void, still, if not disaffirmed by the ward, within a reasonable time after attaining majority, he will be deemed to have ratified it.

A parol partition, consummated by possession and dominion in severalty, confirmed by long continued acquiescence and many changes of title, will not be disturbed in equity.

When one by bargain and sale, for a consideration received and enjoyed, undertakes to dispose of property he does not own, his after-acquired title inures to the benefit of the vendee.

II. WASH.—14.

Although there is no definite description of property to be sold in a guardian's petition for sale, and although the notice of sale was published but three, when the statute prescribes four weeks; still the sale, having been confirmed by the Probate Court, will not be held void in a collateral attack, enough appearing to show the Probate Court was applied to, to act upon a definite matter within its jurisdiction.

If such sale be held void, still the ward, having for many years after attaining majority tacitly acquiesced in, and allowed without objection, valuable improvements to be made upon the property, cannot be heard to question the validity of the sale.

ERROR, to the Second Judicial District, holding terms at Vancouver.

This was an action of ejectment, in which a trial by jury was waived, the cause tried by the Court, and findings of fact and conclusions of law made, upon which a judgment was rendered in favor of defendants below.

The more essential facts in the case are somewhat as follows: Amos M. Short and his wife, Esther Short, made settlement upon a tract of six hundred and forty acres of land in Clarke County, including the premises in dispute, in the month of March, 1848; and continued residence upon and cultivation of said land, as claimants under the Donation Act, until January, 1853, at which time said Short died, leaving his widow and ten children. So far as residence and cultivation were concerned, both in duration and character of the demands of the Donation Act had been met at the time of Short's death. The widow, Esther Short, in October, 1853, filed notification under Sec. 7 of the Donation Act of September 27th, 1850, for a donation claim of said land. In July, 1874, patent certificate on final proofs was issued by the Surveyor General; the west half of the claim to the heirs of said Amos M. Short, and the east half to Esther Short and her heirs.

In the year 1877 patent issued.

On December 12th, 1854, letters of administration on her deceased husband's estate were issued to Esther Short. She was appointed guardian of the minor children, except Alfred D. Short, for whom one J. S. Shockley was appointed guardian in June, 1856.

In July, after the appointment of guardians, a petition in writing was filed in the Probate Court, for a partition of the

real estate among the ten children; the Probate Court appointing three commissioners, who rendered a report, by which they divided the west half of the donation claim into ten subdivisions, allotting one to each of the said children at a stated valuation. The report was ordered confirmed by the Probate Court, the difference in valuations to be otherwise adjusted. This division appeared as a matter of fact to have been acquiesced in by all—at least, no one made any objection afterwards to this arrangement—and thereafter the estate was distributed and the administrator discharged.

From the time of said division, those of the heirs who arrived at age had sold, mortgaged, or in some other way dealt with their respective portions or allotments; while the guardians of the minors seemed to have pursued a similar course with the shares set off to their respective wards, with the approbation or approval of the Probate Court, and made use in some instances of the proceeds derived from such source for the use and benefit of the ward.

The particular tract of thirty-four acres in dispute in this case was the portion awarded to the minor child, Grant M. Short. This particular parcel was inventoried as the estate of said Grant M. Short; money was borrowed by the guardian under the direction of the Probate Court, and mortgage given on this particular tract, and the money was paid over to him.

The guardian petitioned for a sale of this tract of land, which was ordered by the Probate Court, and the same was sold under the order of the Court; said Grant M. Short, at this time being over nineteen years of age, being present at the sale, and making no objection, but rather encouraging bidders.

The publication of notice of the sale was only for three weeks.

This sale was made and confirmed in the year 1865, and through it the defendants deraign title.

The purchasers, from the date of sale, have continued in the exclusive possession of said property, making visible improvements on the same. Grant M. Short attained majority in 1866.

A patent was issued for the donation claim in 1877, granting the west half to Amos M. Short and his heirs, and the east half to Esther Short and her heirs. After the issuance of patent, in the years 1877 and 1878, the heirs at law of Amos M. Short,

while out of possession, conveyed the premises in dispute to the plaintiff or his grantors.

*George H. Williams* and *Leander Holmes*, for Plaintiff in error.

The alleged partition was void for a number of reasons: because made, as shown by the answer, within six months of the appointment of the administrator (Statutes 1854, p. 100, Sec. 195); because the Probate Court had no jurisdiction to determine the west half of the claim belonged to the heirs of Short —that authority being vested exclusively in the Surveyor General (*Wythe* v. *Haskill*, 3 Sawyer, 574; *Wythe* v. *Smith*, 4 Ibid. 24); because the heirs of Amos Short took as donees and purchasers of the Government, and not by descent, and therefore the Probate Court had no jurisdiction. (*Cutt ng* v. *Cutting*, 6 Sawyer, 396; *Honner* v. *Silver*, 2 Oregon, 336; *Hall* v. *Russell*, 11 Otto, 503.)

The petition for partition did not describe the property to be partitioned, except as belonging to the estate; does not show it to be in Clarke County.

It does not state who were the heirs of deceased, or among whom it was to be distributed. Hence there was no jurisdiction conferred. (*Prior* v. *Downey*, 50 Cal. 389; *Townsend* v. *Tallant*, 33 Cal. 54; 29 Ill. 304.)

The guardian sale was void, because the petition for it contained no description of the property to be sold. No notice was given as required by law, or the order of the Court. (*Lion* v. *Vanatta*, 35 Iowa, 521; *Rankin* v. *Miller*, 43 Iowa, 11; *Gray* v. *Larrimore*, 4 Saw. 638; *Galpin* v. *Page*, 3 Saw. 93; *Neff* v. *Pennoyer*, 3 Saw. 274.)

Proof of publication was made by attorney, when the law required the printer's affidavit. (*Steinbach* v. *Luse*, 27 Cal. 295; *Galpin* v. *Pg e*, 18 Wallace, 350.)

The alleged assent and acts of the heirs prior to July 29, 1874, were nothing as estoppels, because at such times they had no title. There was in them no intention to deceive. The grounds of an equitable estoppel have not been laid, either in the answer or proofs. (*Gates* v. *Salmon*, 46 Cal. 361; *Wythe* v. *Smith*, 4 Saw. 24; *Wythe* v. *City of Salem*, 4 Saw. 88;

*Boggs* v. *Merced Co.*, 14 Cal. 367, by Field ; *Hill* v. *Epley*, 31 Penn. St. 34 ; Pomeroy's Equity Jurisprudence, 2d vol., pars. 806, 807 ; *T enton Banking Co.* v. *Duncan*, 86 N. Y. Court of Appeals, 221, 230 ; *Brant* v. *The Virginia Coal Co.*, 93 U. S. 326 ; *Carpenter* v. *Thurston*, 24 Cal. 268 ; *Davis* v. *Davis*, 26 Cal. 38 ; Story's Eq., Sec. 391 ; *Fields* v. *Squires*, 1 Deady, 396.)

Courts of equity cannot relieve against the defective execution of a power created by law, or dispense with any of the formalities required by law for its due execution. (Story's Eq. Ju., Section 96 ; *Young* v. *Dowling*, 15 Ill. 481.)

A judicial proceeding that is a nullity does not lay the foundation for an adverse possession. (*Jackson* v. *Watters*, 12 Johnson R., 365 ; 1 Pa. 55 ; 2 McLean, 473 ; *Livingston* v. *Peru Iron Co.*, 9 Wendell, 512 ; 33 Cal. 318, 674 ; 5 Cowen, 306 ; 8 Cowen, 595 ; *Bernal* v. *Gleim*, 33 Cal. 669 ; *Walker* v. *Turner*, 9 Wheaton, 174–178.)

The defense of champerty amounts to nothing. The reason of that statute having passed away, it is no part of our common law. (Coke on Littleton, 214 ; *Wright* v. *Meek*, 3 Gr. Iowa, 472 ; 40 Conn. 565 ; 9 Ohio, 96 ; 22 N. Y. 177 ; 9 Wendell, 534 ; *Matthew* v. *Fitch*, 26 Cal. 86.)

The fact that plaintiff paid nothing for the conveyance, and that the consideration was furnished by others, does not prevent him being the real party in interest. (*Grinnell* v. *Schmidt*, 2 Sand. 706 ; Pomeroy's Remedies and Remedial Rights, 2d ed. 152 ; *Mills* v. *Murray*, 1 Neb. 327.)

It has been held that a new statute of limitations, lessening the time in which to bring actions, does not apply to causes of action already accrued. (*Calvert* v. *Lowell*, 5 Eng. Ark. 147; *Morse* v. *McLinden*, 5 Eng. Ark., 512 ; *Ashbrook* v. *Quarles' Heirs*, 15 B. Mon. 20 ; *McKenney* v. *McKenney*, 8 Ohio, 423 ; *Scarborough* v. *Durgan*, 10 Cal. 305 ; *Ridgely* v. *Reindeer*, 27 Mo. 442.)

But if applied to then existing causes, a reasonable time within which to bring suit must be allowed. (*Pierce* v. *Tobey*, 5 Vt. 168 ; *Patterson* v. *Gaines*, 9 How. 550 ; *Marsh* v. *Bourroughs*, U. S. C. Ct., South. Dist. Ga., 1 Cin. L. J., 125.)

*B. F. Dennison,* for Defendants in error.

The partition made in 1856 may be upheld on the grounds of acquiescence, ratification, and estoppel. ( *Campbell* v. *Wallace,* 12 N. H. 362 ; *Piatt* v. *Hubbell,* 5 Ohio, 243 ; *McGregor* v. *Reynolds,* 19 Iowa, 228 ; Freeman on Co-tenancy, Sec. 535 ; 19 Iowa, 228 ; 8 Metcalf, 370 ; *McMahan* v. *McMahan,* 13 Pa. St. 381 ; *Thompson* v. *Tolmie,* 8 Curtis' Decisions, 62 ; *Dilworth* v. *Rice,* 48 Mo. 124 ; *Grignon's Lessee* v. *Astor,* 2 How. 319 ; *Maple* v. *Kussart,* 53 Pa. St. 348 ; *Tooley* v. *Gridley,* 3 Sm. & M. 493 ; Freeman on Void Sales, Sec. 48 ; 40 American Decisions, 642, note.)

But the partition of 1856 was valid and binding, as a voluntary parol partition. ( *Wood* v. *Fleet,* 36 N. Y. 499 ; *Jackson* v. *Hardee,* 4 Johnson, 202 ; *Morse* v. *Kerr et al.,* 46 Ind. 468 ; *Buzzell* v. *Gallaher,* 28 Wis. 678 ; *Eaton* v. *Talmadge,* 24 Wis. 217 ; *Booth* v. *Adams,* 11 Vt. 156 ; 24 Vt. 560 ; 16 Vt. 663 ; *Varnum* v. *Abbott,* 12 Mass. 474 ; *Wiseman* v. *Macy,* 20 Ind. 239 ; *Drake* v. *Wise,* 36 Iowa. 476 ; *Bullis* v. *Noble,* 36 Iowa, 618.)

The Donation Act is a present grant with conditions subsequent, complying with which, title vests at once. ( *Mizner* v. *Vaughn,* 2 Sawyer, 269 ; *Lee* v. *Summers,* 2 Or. 260 ; *Blakesly* v. *Caywood,* 4 Or. 279 ; *Dolph* v. *Barney,* 5 Or. 191 ; *Chapman* v. *School District,* 1 Deady, 108 ; *Murray* v. *Murray,* 6 Or. 26 ; *Lamb* v. *Wakefield,* 1 Sawyer, 251.)

Upon the death of Amos Short, the widow and children were tenants in common, and by parol agreement could make partition. ( *Calhoun* v. *Hays,* 8 Watts & Serg. 127 ; *Ebert* v. *Wood,* 1 Binney, 216 ; *McConnell* v. *Caray,* 48 Penn. St. 345 ; *Burmeister* v. *Howard,* 1 W. T. Rep. 207 ; *Johnson* v. *Furnier,* 69 Pa. St. 449 ; *Brown* v. *Caldwell,* 10 Serg. & Rawle, 114 ; *Tomlin* v. *Hilgood,* 43 Ill. 302 ; Freeman on Co-tenancy, etc., Sec. 402.)

Such estoppels apply to infants and *femmes covert.* ( *McPherson* v. *Cunliff,* 11 Serg. & Rawle, 426 ; 14 Am. Dec. 642 ; Freeman on Void Sales, 69, and cases.)

The alleged defect in the guardian's sale is only an irregularity and not a jurisdictional fault. ( *Mohr* v. *Maniewe,* 11 Otto,

417; *Comstock* v. *Crawford*, 3 Wall. 396; *Grignon's Lessee* v. *Astor*, 2 How. 319; 78 Ill. 455; 18 How. 497; 8 Ohio State, 614.)

Equity will always aid the defective execution of a valid power. (*Segee* v. *Thomas*, 3 Blatch. C. C. P. 11.)

A minor's deed is binding, if after majority he knowingly suffers the grantee to make valuable improvements, without indicating his intention of avoiding the sale. (*Davis* v. *Dudley*, 70 Me. 236; 25 Am. Rep. 318; *Hastings* v. *Dollarhide*, 24 Cal. 195.)

A conveyance by one out of possession, when the land is held adversely to the grantor, is void as against such persons. (*Jackson* v. *Demont*, 9 Johnson, 55; Kent's Commentaries, Vol. 4, 8th ed., 487.)

The statute of Henry VIII. is only in affirmance of the common law. (2 McLean's Reports, 380; *McMahan* v. *Bowe*, 114 Mass. 140; 19 Am. Rep. 321; 21 Vt., 6 Wash. 52; *Backus* v. *Byron*, 4 Mich. 535; *Thompson* v. *Reynolds*, 73 Ill. 11; *Newkirk* v. *Cone*, 18 Ill. 449; 15 Am. Dec. 319, note.)

Whether established principles of the common law are applicable to our situation, is a question for the Legislature, not the Courts. (*Powell* v. *Brandon*, 24 Miss. 342; *Dadmure* v. *Lamson*, 9 Allen, 85–89; *Bradstreet* v. *Huntington*, 5 Pet. 401; *Hogan* v. *Kurtz*, 4 Otto, 776.)

The doctrine of equitable estoppel applies against both Esther Short and the heirs in all its force, by reason of their conduct, their acts, their speech when they should have been silent, and their silence when they should have spoken. (Pomeroy's Equity Jurisprudence, Vol. 2, pp. 262–280; 3 Otto, 326; 18 Wallace, 271.)

Opinion by Greene, Chief Justice.

The first step toward deciding this cause is, to determine clearly the nature of what takes place between the United States and its donee, when proceedings are had under the Oregon Donation Act to establish title to the latter. By the act there "is granted" to every man of a certain description, or, if he has a wife, then to him and her in equal parts, as shall be set off to them severally by the Surveyor General, a tract of

land not to exceed a certain area, on condition that the same shall be selected in a certain way, and in consideration that it shall be resided upon and cultivated a certain length of time. This grant is subject, however, to the qualification that if the husband and wife have complied with the provisions of the act so as to entitle them to the grant, and either of them before patent has issued shall have died intestate, as to his or her share, the survivor and children or heirs of the deceased shall be entitled to the share or interest of the decedent in equal proportions. Throughout the transaction the United States holds the position of seller, and the donee that of purchaser. As soon as the necessary selection has been made, and the prescribed residence and cultivation completed, the transaction is closed, as far as bargain and sale is concerned. Nothing remains but to assure the vendor, or the vendor's agents, the officers of the land office, that as matter of fact the grant has become effective, by meeting a fit grantee who has rendered the proposed consideration, so that they may furnish the grantee with good and sufficient evidence of his title. Final proof, so-called, is no part of the consideration which the grantee gives, but is merely evidentiary matter, provided for the purpose of satisfying the land office that the right of the grantee is perfect, and entitles him to a patent.

The act, and not the patent, is the instrument which works the transfer of title. Its language is unmistakable—"there shall be and hereby is granted." One conveys, the other evidences, title. The patent is but a formal and solemn piece of evidence, that all things essential to be done under the Donation Act before passage of title have been done; and that therefore, under the act, title has actually passed out from the United States into the donee. Act and patent together fulfill all the functions of an ordinary deed of conveyance. The two together both convey and evidence title. The patent merely evidences, and does no more; but the act evidences to a certain extent only, and then, over and beyond that, does alone and perfectly convey. When patent issues, it relates back to and combines with the act, as of the date when a fit guarantee rendering full consideration appeared, and so as to form with the act a perfect muniment of title. Title under the Donation Act, therefore, is

always complete before patent issues, and the patent issues by virtue of title completed, and not otherwise. In the case at bar the widow and heirs, if they have acquired any title at all, have got it under the Donation Act. Their patent so recites, and neither they nor any grantee of theirs can, while claiming under that patent, deny it. They are estopped from saying, to the prejudice of any grantee of theirs, but that the husband and ancestor, Amos Short, deceased, duly resided upon and cultivated for the prescribed period the Donation Land Claim known as his, or that by virtue of a full compliance with the essential requirements of the Donation Act his widow and children were, at the date of his death, in January, 1853, entitled under the act to that land claim. Such being their situation, the great question of this case is, Has that title, as to the parcel of land here in dispute, passed, by reason of their acts, from them to the appellees?

All provisions of the Donation Act necessary and precedent to the passage of title had been complied with prior to 1855, and the widow and children then held among them, undivided, all disposable interest in the land. In that year or the next, as appears from the evidence, they agreed to and did, as far as they could, divide the claim into halves—an east half and a west half—assigning to the widow the east, and to the children the west. This, of course, was subject to whatever decision the Surveyor General might make, in determining where the division line should be drawn.

Assuming that the Surveyor General would affirm, or fall in with, this division, and that the west half would by him be set off to them, the children afterwards, in 1856, undertook to procure a further division among themselves of that half. To effect this, those of them who were of age applied personally, and those not of age by guardian, to the Probate Court for a partition. Pursuant to or connected with that application, a partition—at least in form—was made or sought to be made by the Court. Considered as a judicial proceeding, it was doubtless void, except in so far as it engaged the Court in supervising and sanctioning the acts of the participating guardians. But the formal partition all the heirs willingly made actual and substantial, by each personally or by guardian spontaneously tak-

ing possession and dominion in severalty of his or her portion, and by mutually paying and accepting owelty sufficient fully to equalize all the allotments. Was it in fact, then, valid or void?

It is argued by appellant that it was void, for three reasons : 1st, because the guardians acted without authority, and have never had their action affirmed by their wards since the latter became of age ; 2d, because it was by parol and not by deed ; 3d, because that half of the Donation Claim which the heirs undertook to subdivide had not yet been assigned to them by the Surveyor General.

As to the first objection, the assumption that the guardians acted without authority is not borne out by the record. They were in presence of that Court which had peculiar and general jurisdiction over them ; they were parties to the petition for partition among the children ; they proceeded, in the partition among the children, on the basis of the previous partition between the widow and children ; they acted throughout under the eye of their supervising Court ; and their action, after all was done, and with everything in full view and fully understood, was solemnly ratified and confirmed by that Court. If a partition may be compelled, it may also be voluntary. In a voluntary partition, proposing to set apart the shares of minors, those who have charge of the estates of the minors have power to act for their wards, under supervision of the Court which has the estates in charge. Whether they act with due authority to bind their wards, can be seen by inspecting the record of the Court. If they act with judicial authority, they bind their wards ; otherwise not. Where the record shows that the matter which the Court considered was within its jurisdiction, and all necessary parties were before it, there the action of the Court, however irregular, is proof against collateral attack.

But, even admitting that the guardians acted without authority, the wards, on coming of age, were not absolutely obliged to reject what their guardians did. They had an election. Within a reasonable time they could affirm or disaffirm. If, within a reasonable time after reaching majority, they did not disaffirm, they thereby affirmed. In the case before us, their acquiescence, since becoming of age, has continued for periods varying

from eight to twenty years. Having assented, for so many years of their majority, to both partitions, they are now forever bound by both.

To the second objection, we answer that a parol partition, which has been actually consummated by possession and dominion in severalty, and which has been confirmed by long continued acquiescence and by many changes of title, ought not to be and will not be disturbed in equity. There are cases holding that it affords a legal title in severalty, even in face of a statute requiring transfer of realty to be in writing or by deed. But we do not need to go that far.

Possession and dominion, initiated by consent, have been held adversely under these partitions for a quarter of a century. Guardians, under supposed authority of a proper supervising Court, have undertaken to bind their wards' interests. Wards, on becoming of age, have affirmed by long acquiescence, and many of them by express acts, the doings of their guardians. Estates have passed for full values into the hands of purchasers. Costly improvements have been made in full faith of the stability of what has been done. The strongest possible interlacing equities now bind the parties to remain henceforth forever fixed in their relative positions.

To the third objection, the familiar principle applies; that where one has, by bargain and sale, for valuable consideration which he has actually received and enjoyed, undertaken to dispose of a proprietary interest which he had not at the time, but afterwards acquires, his acquisition of it enures to the use of his *quondam* vendee. If the action of the Surveyor General had been such that these heirs could never have, each of them, an undivided tenth of the west half to dispose of, then their petition would have turned out to be, indeed, an empty affair. But so it happened, that the award of the Surveyor General to the heirs in 1874 exactly coincided with their appropriation for themselves and partition among themselves of 1856. Their titles have fallen just along the lines and into the spaces which, for mutual and valuable considerations, long ago paid and spent, they had intelligently and advisedly marked out and provided. To the meeting of their own minds, it was only necessary to add the mind of the Surveyor General. In 1874, before their minds

had drawn apart, his was added; and then therefore, by relation of his award back to 1856, no one yet dissenting, the partition, so far as this aspect of it is concerned, became perfected.

Under these partitions, Grant H. Short, one of the minor children, became invested with and possessed of a share of the west half, known as Lot No. 7, which is the land in controversy. He held and dealt with this lot as his, until 1865. In that year, while he was still a minor, his guardian, who was one of his brothers, acting under direction of the Probate Court, sold it to the appellee, Nicholas Schofield, for seven hundred and eighty-five dollars, a fair price for it. This sum was applied, by direction of the Probate Court, in payment of a mortgage debt upon the premises, and of other debts proved and allowed against the minor's estate. Next year, Grant H. Short attained his majority. After twelve years of silence, he in 1878 gives to appellant's grantor a quit-claim deed of all his right, title and interest in the Donation Claim. About the same date, the rest of the children give to appellant's grantor similar deeds as to their respective interests. Meantime, appellees have put upon the premises permanent improvements of great value. Now the appellant contends that this last guardian's sale was void, for reasons reducible to two: First, because there was no certain description of the property to be sold in the petition for sale ; and second, because no notice was given, such as the order of Court and the statute required. True, the proceedings before sale show irregularities, but they were not, in our opinion, such as open the decree confirming the sale to collateral attack. Enough is in the petition to show that the Probate Court was asked to act upon a definite matter within its proper jurisdiction. In all that it did, from the petition to the decree of confirmation, it was a Court of record, acting within its proper sphere ; and however erroneous in action, and however liable to be reversed on error, it is entitled to have its adjudication stand impregnable until so impugned.

But if we regard the judicial proceeding as invalid, our attention is arrested by the fact that the ward and all others interested have let at least twelve years go by without offering to question it, during eight of which years every one of them has been of full age. Entire, though tacit, acquiesence for such a

length of time is equivalent to most solemn express affirmance. From twenty-one to thirty-three years of age, in full possession of his faculties, well aware of all the circumstances, Grant H. Short has lived along without allowing to escape him a single intimation disapproving the act of his guardian. The other children during the same space, but for differing periods of majority, have done likewise. They have thus, every one of them, thoroughly and forever estopped themselves from disavowing that act.

In conclusion, we will say that, in our opinion, the decision of this whole case may be satisfactorily planted on the doctrine of estoppel. If there be such a thing as estoppel, by failure to make objection within a reasonable time to doings done colorably in one's own name, and whereof he has had the benefit, and which are susceptible of being ratified, because bearing fruits capable of being legitimately enjoyed, then this is the case, or seems so to us, where that estoppel occurs.

Appellant could, at the most, recover only the interests of the heirs not estopped. His case is strongest where he represents the minors, and among them it varies in strength, in proportion to their length of nonage respectively after their father's death. But the youngest child was eight years of full age before he ventured by quit-claim deed, or in any other way, spontaneously or on solicitation, to object to what had been done for him by guardian, at periods varying from thirteen to twenty-one years previously. The very youngest of these children has slept on his alleged rights too long to be heard now to press them in a Court of equity.

Let the judgment of the District Court be affirmed.